**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK STEVENS (#K-89709), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 15-cv-03523 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| KIMBERLY BUTLER, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Derrick Stevens, a prisoner incarcerated at Lawrence Correctional Center, has

filed a petition for a writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254 to challenge his

2003 murder conviction in the Circuit Court of Cook County, Illinois. For the reasons stated

below, the Court denies the petition on its merits and declines to issue a certificate of

appealability.

**BACKGROUND**

State court findings of fact have a presumption of correctness that can be rebutted only by

clear and convincing evidence. *Brumfield v. Cain*, 576 U.S. 305, 322 n.8 (2015) (citing 28

U.S.C. § 2254(e)(1)). Stevens has not made such a showing, and so the Court draws the

following factual history from the state court record. (Dkt. No. 19.)

Stevens was convicted of murdering Leon Mayers. *Illinois v. Stevens*, No. 1-04-0015 (Ill.

App. Ct. Mar. 31, 2006) (Dkt. No. 19-1 at 2–3) ("*Direct Appeal*"). The shooting occurred shortly

after midnight on October 10, 2000 in the Back of the Yards neighborhood on Chicago's

southside. (Dkt. No. 19-1 at 3.) Prior to the shooting, Mayers was sitting with his girlfriend,

Brenda Green, in her car parked at 51st Street and Laflin Avenue. (*Id.*) Stevens was a member of

the Bar None faction of the Black P Stone Gang. (*Id*.) He was in the front passenger seat of a car driven by Andre Brown, a "general" in Stevens's gang. (*Id*.) Two men were sitting in the backseat of the car behind Brown and Stevens. One of those men was Marlin Gosa. (*Id*.) Stevens and Brown were driving around in celebration of Brown's birthday. (*Id*. at 6.) At the time, Brown and Mayers were on bad terms because Mayers was selling drugs in Brown's territory. *Id*. While driving around that evening, Brown and Stevens came upon Mayers sitting in Green's car. (*Id*. at 3.) When Brown's car pulled up next to Green's car, Green heard someone say, "There go that mother fucker." (*Id*.) Mayers told Green to drive away, and she sped off at a high rate of speed with Brown's car following in pursuit. (*Id*.)

Green heard gunshots and in the rearview mirror she saw Brown extending his arm out of his car window holding a gun. (*Id*. at 3–4.) Mayers told Green to slow down the car and jump out. (*Id*. at 4.) She did so while Mayers remained in the passenger seat. (*Id*.) The car continued to roll forward, only coming to a stop when it hit a light pole. (*Id*.) Brown stopped his car and gave his gun to Stevens. (*Id*.) Green, who was now 15 feet away, saw Stevens walk up to the passenger side of her car where Mayers was still seated. (*Id*.) Stevens then shot into the car until he had emptied all the bullets from the gun. (*Id*.) Stevens said, "We got that mother fucker. Bar None, running it," he got back into Brown's car, and they drove away. (*Id*.) Green returned to her car, where she saw Mayers "shot up in a lot of blood" inside the car. (*Id*.) Mayers later died from his gunshot wounds. (*Id*.)

Green testified against Stevens at his trial. (*Id*. at 3.) She explained that she knew Stevens, Brown, and Gosa from the neighborhood. (*Id*. at 3–4.) In fact, Green knew Brown's girlfriend as well, and she explained that Brown was driving his girlfriend's car on the evening

2

of the murder. (*Id*. at 3.) Green consistently identified Brown and Stevens as the shooters—she immediately identified them by their respective nicknames of "Stricker" and "Poo" when she was questioned by the responding police at the crime scene that evening; she later identified Stevens, Brown and Gosa in police photographs and during in-person lineups. (*Id*. at 4.)

The police arrested Stevens four days after the shooting. (*Id*. at 5.) He explained in a statement to police and in a follow up videotaped statement to an assistant state's attorney that Brown led Stevens's gang faction. (*Id*.) Stevens also said that gang rules required him to do as Brown instructed and that Brown would kill him if he refused. (*Id*.) According to Stevens, following the chase and crash of Green's car, Brown gave him the gun and told him to "take care" of Mayers. (*Id*. at 6.) Stevens thus conceded that he shot the gun but he nonetheless claimed that he did not shoot Mayers. (*Id*.) Instead, he said that he attempted to make it look convincing to Brown by shooting the gun inside the car's passenger compartment. (*Id*.)

Gosa was arrested by police a month after the shooting. (*Id*.) He gave a written statement and testified before the grand jury. (*Id*. at 6–7.) He repudiated his statement at trial, however, claiming that the police told him what to say and that he was not actually present at the shooting. (*Id*. at 7.) Gosa's statement and grand jury testimony were read to the jury at Stevens's trial. (*Id*.) In Gosa's police statement and grand jury testimony, he stated that he was also in the Black P Stone gang and that there was a gang war going on over drug territory at the time of the murder. (*Id*. at 6.) He confirmed he was in the backseat of the car with Brown and Stevens. (*Id*.) Gosa said Brown gave Stevens the gun but that Stevens "'fire[d] a lot of shots at the guy sitting in the passenger seat.'" (*Id*. at 6–7.)

The jury found Stevens guilty of first-degree murder. (*Id*. at 7.) His conviction was affirmed by the Appellate Court of Illinois (*id*. at 17), and his petition for leave to appeal ("PLA") was denied by the Supreme Court of Illinois on direct appeal. *Illinois v. Stevens*, No. 102566, 857 N.E.2d 682 (Ill. Sept. 27, 2006) (Table). Stevens brought a postconviction petition in state court following his direct appeal. *Illinois v. Stevens*, No. 2014 IL App (1st) 121735-U, 2014 WL 3518810, at *3 (Ill. App. Ct. July 15, 2014) ("*Post Conviction Appeal*"). The trial court denied the postconviction petition, and the appellate court affirmed the decision on appeal. *Id*. at *3–*7. Stevens did not bring a PLA before the Supreme Court of Illinois in his postconviction proceedings. Stevens now brings the present habeas corpus action before this Court.

## DISCUSSION

Stevens raises three claims in the present habeas corpus petition: (1) his trial counsel was ineffective for raising a compulsion defense; (2) his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of aggravated discharge of a firearm; and (3) he was denied the counsel of his choice.

### I.     Claim One

Stevens first argues that his trial counsel was ineffective for asserting a compulsion defense at trial. Raising compulsion as a defense conceded Stevens's participation in the murder. Illinois law, however, did not allow a compulsion defense in light of the particular facts of Stevens's case and, in addition, the defense was undermined by the prosecution's invocation of an accountability theory to support the murder charge. Without a valid compulsion defense, Stevens argues, his trial counsel put him in the untenable position of admitting guilt without presenting a valid defense, thus leaving the jury no option other than to vote for conviction.

4

In rejecting Stevens's claim, the state appellate court explained that Stevens's defense counsel did not actually rely on a compulsion defense;[1] rather, his counsel used his fear of retribution from Brown to explain Stevens's actions. (Dkt. No. 19-1 at 12.) Defense counsel argued at trial that Stevens was subordinate to Brown within their gang. (*Id.* at 9.) Brown gave Stevens the gun and ordered him to shoot Mayers. (*Id.*) Stevens claimed in his police statement that he took part in the crime out of fear of retribution from Brown and the gang if he did not follow Brown's orders. (*Id.*) Defense counsel thus argued as a defense at trial that Stevens did not actually shoot the victim but instead shot into the car's compartment in an attempt to fool Brown. (Dkt. No. 19-1 at 9–10); (Dkt. No. 19-5 at 146) ("He is in the gang. . . . He knows when the man gives him the gun, he has to do. He gets out, and he fakes shooting."). Trial counsel further argued that the bullets that killed Mayers were actually fired from a distance, suggesting that Brown killed the victim when shooting at him during the chase. (Dkt. No. 19-1 at 9–10.); (Dkt. No. 19-5 at 148) ("[T]here was no evidence of close range firing on the body of [the victim.] . . . No "powder burns" . . . .) The state appellate court concluded that Stevens's defense counsel was attempting to make the best of the situation in light of the overwhelming evidence against Stevens, including testimony from two eyewitnesses identifying Stevens as the shooter and Stevens's own statement to the police. The state appellate court concluded that defense counsel was not ineffective

---

[1] Stevens correctly points out that the affirmative defense of compulsion was unavailable to him because he did not face an immediate threat of harm from Brown. *See Illinois v. Coaxum*, No. 2018 WL 160069-U, 2018 WL 4850387, at *8 (Ill. App. Ct. Oct. 5, 2018) (citations omitted). For a defendant to assert the compulsion defense, the threatened harm must be immediate so as to compel the criminal conduct, while a threatened future harm is generally insufficient. *Illinois v. Lewis*, No. 2015 IL App (1st) 122619-U, 2015 WL 325136, at *7 (Ill. App. Ct. Jan. 26, 2015); *see Illinois v. Valladares*, 994 N.E.2d 938, 956 (Ill. App. Ct. 2013) (denying compulsion defense to gang member found guilty of murder for supplying murder weapon when he did so out of fear that he would be severely beaten in the future by fellow gang members if he failed to provide the gun as instructed).

because he fashioned the most reasonable defense available under the circumstances. (Dkt. No. 19-1 at 13.)

The state appellate court on direct appeal was the last state court to adjudicate Stevens's claim on the merits. *Direct Appeal*, No. 1-04-0015 (Dkt. No. 19-1 at 7–13). Thus, this Court reviews that decision. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011). The Court's review is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Thus, the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d). "The AEDPA's standard is intentionally 'difficult for [a petitioner] to meet.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). This "'highly deferential standard [] demands that state[]court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Stevens must show both deficient performance by his counsel and prejudice as a result. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

6

In this case, Stevens cannot assert a "contrary to" argument because the state appellate court properly set forth the controlling *Strickland* standard. (Dkt. No. 19-1 at 7–9.) Similarly, the state appellate court's rejection of Stevens's argument was not an unreasonable application of *Strickland*. In reviewing whether the state court's application was reasonable, the Court first considers the *Strickland* performance prong. To establish deficient performance, Stevens must show that "'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 688). The Court proceeds with a "'strong presumption'" that counsel's performance fell within the "'wide range'" of reasonable professional assistance. *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Here, the state court correctly recognized that Stevens's counsel did not base his defense on an impermissible compulsion defense. Instead, Stevens's counsel explained the gang's requirement that Stevens follow Brown's instructions or face punishment as part of a larger argument that Stevens did not actually shoot the victim but instead only playacted doing so in an attempt to convince Brown. Defense counsel understandably adopted this approach because it echoed what Stevens told the police in his confession. (Dkt. No. 19-1 at 6) ("The defendant stated that he was trying to make it look convincing for Brown because if 'you didn't do what Brown told you to do, Brown would do something to you.'"). In sum, given the evidence against Stevens, including his own statement to the police and the testimony from eyewitnesses, his trial counsel's defense strategy was reasonable. As a result, Stevens cannot demonstrate deficient performance by his counsel.

Stevens also has not demonstrated prejudice. To show prejudice, Stevens must demonstrate, "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694). There was overwhelming evidence of Stevens's guilt: he, along with a fellow gang member, chased after a rival drug dealer as a part of an ongoing dispute over drug territory; two eyewitnesses, both of whom knew Stevens, identified him as the shooter; and Stevens confessed his involvement to the police. In light of the weight of this evidence, Stevens cannot show prejudice under *Strickland*.

As the state appellate court's rejection of Stevens's claim was neither contrary to nor an unreasonable application of *Strickland*, Claim One is denied.

## II.    Claim Two

Stevens argues in Claim Two that his trial counsel was ineffective for failing to seek a jury instruction for the lesser-included charge of aggravated discharge of a firearm. Stevens raised this claim on direct appeal, but the state appellate court refused to address it, explaining that the claim was better raised in a postconviction petition. *Direct Appeal*, No. 1-04-0015 (Dkt. No. 19-1 at 14.) Stevens did raise the claim in his postconviction petition, and it was adjudicated by the state appellate court on postconviction appeal. *Post Conviction Appeal*, No. 2014 IL App (1st) 121735-U, 2014 WL 3518810, at *4-*7. Stevens did not, however, bring a PLA on postconviction review.

Respondent argues that Stevens's failure to bring a PLA in his postconviction proceedings results in procedural default of this claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018). Stevens, however, explains

8

that he provided his PLA filing to prison officials for mailing and asserts that the prison's

mailing system is at fault for losing his document. (Dkt. No. 1 at 3.)

      Stevens's allegation regarding the prison-mail system implicates the elements of both

cause and prejudice. Cause is an "'objective factor, external to [the petitioner] that impeded his

efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465

(7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause

include: (1) interference by officials making compliance impractical; (2) the factual or legal basis

was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v.*

*McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). A

prison's failure to mail a prisoner's filing, resulting in the default of a claim, can constitute cause

excusing the default. *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003). The Court, however,

need not explore Stevens's allegations regarding whether he attempted to mail a postconviction

PLA because the underlying claim is meritless.

      The state appellate court on postconviction review was the last court to adjudicate

Stevens's claim on the merits. *Post Conviction Appeal*, No. 2014 IL App (1st) 121735-U, 2014

WL 3518810, at *4-*7. That court held, as a matter of Illinois law, that Stevens was not entitled

to a jury instruction regarding a lesser-included charge of aggravated discharge of a firearm. *Id*.

As Stevens was not entitled to the instruction, the state appellate court held that there was no

*Strickland* violation based on defense counsel's failure to request it. *Id*. at *7 ("We find that

defendant was not entitled to a jury instruction on the lesser-included offense of aggravated

discharge of a firearm; and, consequently, his trial counsel did not act unreasonably in failing to

request such an instruction."). And even though Stevens is raising a *Strickland* claim, the Court

is bound by the state court's ruling with respect to its own state law within the *Strickland* analysis. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam); *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) ("[B]ecause it is not our place to second-guess state courts in interpreting state law we must find that the State court did not make an unreasonable application of *Strickland* . . . ."). In accordance with the state court's interpretation of Illinois law, Stevens was not entitled to a jury instruction on the lesser-included charge of aggravated discharge of a firearm. Trial counsel will not be found ineffective for failing to seek an improper jury instruction. *Carrion v. Butler*, 835 F.3d 764, 778–79 (7th Cir. 2016) (holding that counsel is not ineffective for failing to raise losing arguments).

But even assuming *arguendo* that this Court could reexamine the question of whether Stevens was entitled to an instruction on the lesser-included charge, the Court would still find no *Strickland* violation. "'A defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.'" *Post Conviction Appeal*, No. 2014 IL App (1st) 121735-U, 2014 WL 3518810, at *5 (quoting *Illinois v. Medina*, 851 N.E.2d 1220, 1226 (Ill. 2006)). Stevens cannot show that a rational jury would have acquitted him of murder. Despite defense counsel's valid efforts to construct a defense suggesting that only Brown's bullets struck the victim and that Stevens playacted shooting in the victim's car to appease Brown, the evidence supporting Stevens's murder conviction was overwhelming. The eyewitnesses testified that Stevens shot the victim. He was also an accomplice in support of Brown. Simply put, a rational jury would not have acquitted Stevens of murder. He was not entitled to the instruction for a lesser-included

offense, and so, as explained above, defense counsel was not ineffective for failing to procure the instruction.

Finally, even if the evidence were such that Stevens was entitled to the instruction, defense counsel's failure to pursue it would not constitute deficient performance under *Strickland*. A strategy of "go[ing] for broke by seeking an acquittal on the more serious charge" and avoiding a compromise verdict of guilty on a lesser-included offense would have been reasonable. *See McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009). As discussed above, the evidence of Stevens's guilt was overwhelming. Defense counsel properly argued that Brown was exclusively responsible for the shooting and that Stevens merely playacted when shooting into the victim's car. It would be a reasonable decision by defense counsel to eliminate the possibility of a compromise verdict under these circumstances. *Lopez v. Thurmer*, 594 F.3d 584, 588 (7th Cir. 2010) (holding that defense counsel's decision to forgo an instruction on a lesser-included offense to avoid a possible compromise verdict was within the wide range of professionally competent performance under *Strickland* because it was consistent with an overall defense strategy that prisoner was innocent).

In sum, the state appellate court's rejection of Stevens's claim was neither contrary to, nor an unreasonable application of, *Strickland*. Claim Two is thus denied as well.

### III.    Claim Three

Stevens's final argument alleges denial of his choice of counsel. Stevens claims that he hired an attorney named McNeil to represent him, but McNeil allegedly turned over the handling of the case to a different attorney, Richard Heaston. The trial transcript shows that Heaston was employed by E. Duke McNeil & Associates when he represented Stevens. (Dkt. No. 19-3 at 30.)

Respondent correctly points out that this claim is procedurally defaulted. The claim was not presented on direct appeal. (Dkt. Nos. 19-2; 19-7.) The claim was presented in Stevens's postconviction petition at the trial court level (Dkt. No. 19-8 at 22), but then was not included in his postconviction appeal (Dkt. No. 19-10), and Stevens did not bring a postconviction PLA. Thus, the claim is procedurally defaulted because Stevens failed to raise it to all levels of the state court as required. *Boerckel*, 526 U.S. at 845. He cannot excuse the default based on cause and prejudice, or based on a fundamental miscarriage of justice. Unlike Claim Two, Stevens brought a postconviction appeal but that appeal failed to include the instant claim resulting in the default.

Equally, ineffective assistance of counsel does not excuse the default. An ineffective assistance of counsel argument asserted to excuse a default must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Stevens has not exhausted any ineffective assistance of counsel argument to excuse the default of this claim. Although ineffective assistance of counsel is a single claim, *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)), Stevens must raise the particular factual basis for each aspect of the alleged ineffective assistance of counsel claim to preserve the respective argument. *Pole*, 570 F.3d at 935 (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [the petitioner] must have 'identified the specific acts or omissions of counsel that form the basis for [his] claim of ineffective assistance.'" *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (quoting *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997)). "[A] [p]etitioner cannot argue one theory [of

12

ineffective assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Johnson*, 574 F.3d at 432 (citing *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998)). Thus, the fact that the ineffective assistance of counsel claim in Claim One is properly exhausted does not excuse Stevens's default of this claim.

Moreover, Stevens cannot argue that his postconviction counsel's failure to preserve the claim on postconviction appeal excuses the default. While the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), permitted ineffective assistance of postconviction trial counsel to excuse a defaulted ineffective assistance of trial counsel claim, that is not the case here—as the default is from the failure to raise the claim in a postconviction appeal. *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996) (holding that ineffective assistance of postconviction appellate counsel does not constitute cause to excuse a default). And moreover, *Martinez* and *Trevino* are inapplicable to Illinois prisoners. *Crutchfield v. Dennison*, 910 F.3d 968, 978 (7th Cir. 2018). Thus, cause and prejudice cannot excuse Stevens's defaults.

That leaves the fundamental miscarriage of justice (*i.e.*, actual innocence) as a possible gateway to excuse Stevens's default. To show actual innocence, Stevens must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Stevens must present new, reliable evidence that was not presented at trial—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—to make a credible

13

claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")). But there is no new evidence suggesting that Stevens is actually innocent, and the evidence of Stevens's guilt at trial was overwhelming. *Hayes*, 403 F.3d at 938 ("[I]t is black letter law that testimony of a single eyewitness suffices for a conviction even if 20 bishops testify that the eyewitness is a liar."). Claim Three is thus denied as well.

## IV. Certificate of Appealability and Notice of Appeal Rights

Having denied Stevens's petition on the merits, the Court must determine whether to issue a certificate of appealability. Because Stevens cannot make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate, much less disagree with, this Court's resolution of Stevens's claims, the Court declines to issue a certificate of appealability. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Stevens is advised that this is a final decision ending his case in this Court. If Stevens wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Stevens need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule

14

59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion also cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

For the reasons stated above, Stevens's habeas corpus petition (Dkt. No. 1) is denied on the merits. The Court declines to issue a certificate of appealability. In addition, the Clerk is instructed to: (1) terminate Respondent Kimberly Butler, and replace her with Stevens's current custodian, Dr. Deanna Brookhart, Acting Warden, Lawrence Correctional Center; (2) alter the case caption to *Stevens v. Brookhart*; (3) update Stevens's address on the docket to reflect that he is incarcerated at Lawrence Correctional Center; and (4) enter a judgment in favor of Brookhart, as Respondent, and against Stevens, as Petitioner. Stevens is reminded that he must always keep a current address with the Court.

ENTERED:

Dated: July 2, 2020

_____

ANDREA R. WOOD
United States District Judge

15